UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| AXA CORPORATE SOLUTIONS NIEDERLASSUNG DEUTSCHLAND<br><br>    Plaintiff,<br><br>VERSUS<br><br>LECTRUS CORPORATION<br><br>    Defendant, | Civil Case No.: 4:15-cv-3606 |

COMPLAINT

NOW COME, AXA Corporate Solutions Niederlassung Deutschland ("AXA") and for its complaint against defendant, Lectrus Corporation, ("Lectrus") represents and avers, upon information and belief as follows:

1.

This claim involves the breach of contracts to block, brace and provide export packaging resulting in damage to a shipment of three fully-equipped Co2 control cabins, and one fully-equipped DomGas cabin (collectively "the Gorgon Cabins" or "cabins"), all of which were to be used in the Gorgon Project for the construction of a liquid natural gas plant in Australia ("the Gorgon Project").

2.

Plaintiff, AXA Corporate Solutions Niederlassung Deutschland, is a foreign insurance company organized and existing under the laws of Germany and is the subrogated cargo insurer of Siemens Industry, Inc. ("Siemens"), for damage sustained by the aforementioned cabins.

**3.**

Defendant, Lectrus, is a corporation organized and existing under the laws of the state of Tennessee with offices and operations in Houston, Texas engaged in the business of manufacturing custom metal enclosures and electrical systems integration, and was the manufacturer of the Gorgon Cabins involved in this litigation.

**4.**

This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332, as the amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs, and the parties are of diverse citizenship.

**5.**

In 2010 AXA's insured, Siemens, entered into a contract with Lectrus for the manufacture in Houston of six CO2 control cabins to house equipment supplied by Siemens, including converters called "Perfect Harmony Drives," transformers, motor control centers and power cells, all as more particularly described in Siemens' Purchase Order No. 4502003785. Later in 2010 Siemens and Lectrus entered into a contract for the manufacture of two DomGas cabins housing the DomGas drives, as evidenced by Siemens' Purchase Order No. 4502261887, all of which were to be used as part of the modules that were to form part of a liquid natural gas plant being built for Chevron off the coast of Australia.

**6.**

As part of its contractual duties, Lectrus was to manufacture the metal cabins, as well as to install and integrate the technical components supplied by Siemens (perfect harmony drives, power cells, transformers and motor controal centers) inside the cabins.

**7.**

After the two contracts to manufacture the Gorgon Cabins and to install and integrate Siemens-supplied equipment in the cabins had been formed, Siemens solicited a proposal from Lectrus to block and brace each cabin with timber treated in accordance with the AS1604 standard and to provide export packing suitable to protect the high-tech , sensitive equipment installed inside the cabins during ocean shipment from Houston to Ulsan, Korea.

**8.**

On December 9, 2010 Lectrus submitted to Siemens a proposal to block and brace the cabins and provide export packaging. Siemens accepted the proposal. Accordingly, in addition to contracting to manufacture the cabins and install and integrate Siemens' equipment, Lectrus also contracted with Siemens to block, brace and prepare the cabins interiors for export shipment from Houston to Ulsan by sea.

**9.**

To fulfill its contract obligation to block, brace and provide export packing for the Gorgon Cabins for shipment overseas, Lectrus retained the services of Transaction Packaging Inc. to serve as sub-contractor.

**10.**

Thereafter, between December 13 and December 28, 2011, three of the $CO_2$ control cabins, which were designated as item Nos. 000020, 000030, and 000040 in Purchase Order No. 4502003785, and one of the DomGas cabins, designated as item 000010 in Purchase order No. 4502261887, were transported by truck from Lectrus' factory in Houston to the Port of Houston for ocean shipment, where they remained in storage until loaded onboard the ocean vessel that

eventually carried them to Ulsan. On January 5, 2012 the CO2 control cabins were loaded aboard the M/V Fortune Epoch; and on January 25, 2012 the DomGas cabin was loaded aboard the M/V Hal Pendant. Thereafter, the four Gorgon Cabins arrived at Ulsan, South Korea on or about February 12, 2012 and were subsequently dicharged from the ocean vessel between February 15-16, 2012.

**11.**

On or about February 22-23, 2012 one of the Gorgon Cabins, while stored in the poort of Ulsan was opened and inspected by Siemens' customer, Kellog Joint Venture Gorgon (KJVG), who discovered that the contents of the cabin were damaged from heavy condensation that developed inside the cabin during the shipment due to insufficient export packing. KJVG reported these findings to Siemens.

**12.**

Upon later inspecting the contents of all of the Gorgon Cabins and evaluating the findings, Siemens determined that the Perfect Harmony Drives, power cells, transformers and machine control centers in each of the control cabins were damaged beyond repair and thus considered a total loss. Subsequently, Siemens presented an insurance claim to AXA for the total sum of $9,484,000.

**13.**

AXA's surveyors, C. Gielisch GmbH, who also had inspected the Gorgon Cabins and their contents, was of the opinion that some of the equipment could be restored and therefore should not be considered a total loss. Considerable efforts were made to locate a facility in South Korea where the restoration of the internal components could be performed but to no avail. Thereafter, the

cabins were returned to the United States for further technical evaluation and to determine whether the contents of the cabins could be restored as suggested by AXA's surveyor.

**14.**

Representatives of Gielisch and Siemens met in Siemens offices in the United States to discuss how the cabins and the equipment inside should be treated. Gielisch continued to maintain that the control cabins and their contents could be restored. Siemens, however, agreed only to the restoration of the large transformers but rejected the restoration proposal for the Perfect Harmoney Drives and other equipment.

**15.**

AXA, based on the opinion of its consultants, declined to pay in full Siemens' claim of $2,438,000 for the replacement Perfect Harmony Drives in the three CO2 cabins. Instead, AXA agreed to pay and did pay only the costs totaling $600,000 for restoring those three drives, replacement costs of $450,000 for drive components which could not be restored and costs totaling $450,000 for testing the three restored drives.

**16.**

AXA also declined to pay in full Siemens' claim of $845,000 for the DomGas drive. Instead, AXA agreed to pay and did pay costs totaling $200,000 for restoring the drive and costs totaling $150,000 for testing the restored components of the drive.

**17.**

Finally, AXA declined to pay in full Siemens' claim for $914,162 of inspection costs incurred on the ground that the hourly rate for inspection was excessive.

**18.**

The total amount of damages recognized by AXA's surveyor, Gielich, is $7,970,583.

**19.**

Siemens and AXA have now settled the insuirance claim by AXA paying $7,970,583 of Siemens total damages.

**20.**

The damage to the Gorgon Cabins and their contents was not caused by any act or omission of Siemens or those for whom Siemens may be responsible, but instead was caused by Lectrus' breach of the contract with Siemens to block, brace and provide export packing for the Gorgon Cabins in failing to properly package and protect the internal components of the Gorgon Cabins for export shipment from Houston to Ulsan. Lectrus is therefore responsible for the damages to the Gorgon Cabins.

**21.**

Prior to the filing of this action, AXA's recovery agents, Gustav Ziegler Havarie Bureau presented AXA's claim to Lectrus in an effort to resolve this matter amicably without court intervention, but those efforts have been to no avail.

**22.**

By reason of the premises, plaintiff has sustained losses presently estimated to be in the range of $7,200,000 to $7,970,583.

**23.**

Additionally, because of its breach of the contract, Lectrus is liable to AXA for statutory attorneys' fees in accordance with TEX. CIV. PRAC. & REM. CODE § 38.001.

**24.**

This action is brought on behalf of and of the interest of all parties who may be or may become interested in the cargo herein referred to as their respective interests ultimately appear.

**25.**

All and singular, the matters alleged are true and correct.  Plaintiff reserves the right to amend and supplement this Complaint as further facts become available.

**WHEREFORE**, plaintiff prays that:

I. Defendant, Lectrus Corporation be served with copies of this Complaint and a summons;

II. Judgment be entered in favor of AXA Corporate Solutions Niederlassung Deutschland and against the defendant Lectrus Corporation; and

III. Plaintiff be awarded such other general and equitable relief to which it may be entitled.

> Respectfully submitted,
>
> **MILLER & WILLIAMSON   LLC**
>
> s/ Iliaura Hands
> **MACHALE A. MILLER** (TX. Bar No. 24028580)
> S.D.TX. Adm.  ID No.  32454
> **ILIAURA HANDS** (TX. Bar No.24033597)
> S.D.TX  Adm.  ID No.  26871
> 1515 Poydras Street, Suite 2130
> New Orleans Louisiana 70112
> Telephone: 504-525-9800
> Telefax: 504-525-9820
> Email: Machale@miller-llc.com
>          ili@miller-llc.com
> *Attorneys for AXA Corporate Solution*
> *Niederlassung Deutschland.*

Please issue summons to:

LECTRUS CORPORATION
through its agent for service of process:
CT Corporation System
1999 Bryan Street, Suite 900
Dallas TX 75201